UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                              Plaintiff,

                                                    **DECISION AND ORDER**
        v.                                          20-CR-61-A

JACOB MELVIN,

                              Defendant.


        Defendant Jacob Melvin, the only defendant remaining in this multi-defendant

case, is charged in all counts of an eight-count Indictment (Dkt. No. 1) with Hobbs

Act conspiracy (Counts 1 and 4); Hobbs Act robbery (Counts 2 and 5); using,

possessing, and brandishing a firearm (Counts 3 and 6); felon in possession of a

firearm and ammunition (Count 7); and possession of a firearm with an obliterated

serial number (Count 8).

        The case was assigned to this Court, and the Court referred the case to

Magistrate Judge Jeremiah J. McCarthy pursuant to 28 U.S.C. § 636(b)(1) for the

conduct of pretrial proceedings.  On March 13, 2023, following a two-day evidentiary

hearing,[1] Magistrate Judge McCarthy issued a Report and Recommendation

---

[1] The hearing was conducted on March 19, 2021, with a scheduled continuation date of April 19, 2021 due to the length of the hearing.  However, the second day of the hearing was not ultimately held until November 29, 2022.  The over 20-month delay between hearing dates stemmed from attorney scheduling conflicts and witness availability issues, but primarily from attorney-client conflicts that arose, necessitating two changes in defense counsel; and lengthy plea negotiations that appeared fruitful and resulted in confirmation that Defendant was ready to take a plea before this Court.  The plea did not go forward, however, because Defendant rejected the final plea offer, resulting in re-referral of this case to Judge McCarthy to complete the hearing.

("R&R") (Dkt. No. 230) recommending that this Court deny Defendant's motions to suppress (Dkt. No. 56) evidence obtained from a warrantless search of 36 Hoffman Place (lower rear apartment), Buffalo, New York on February 19, 2019, and a subsequent show-up identification of Defendant on that same date.  Counts 1, 2, and 3 of the Indictment arise from the February 19, 2019 armed robbery of food and U.S. currency from a victim delivery person employed by Niagara Deli & Pizzeria that prompted the warrantless search.  Counts 7 and 8 relate to a firearm recovered on May 19, 2019 that, according to the Government, resembled the firearm used in the February 19, 2019 robbery and the second charged armed robbery, and had Defendant's DNA on it.

Defendant filed objections to the R&R (Dkt. No. 231) on March 24, 2023.  The Government filed a response in opposition (Dkt. No. 233), and Defendant filed reply papers (Dkt. No. 234).  The Court held oral argument on May 17, 2023, at which time the matter was considered submitted; thereafter, the Court indicated that it required additional time to conduct further research in its evaluation of Defendant's objections.

As explained herein, Defendant's objections to the R&R are granted, Judge McCarthy's R&R is adopted in part and rejected in part, and the case is recommitted to Judge McCarthy for a ruling on the merits of Defendant's motion to suppress.

**DISCUSSION**

A magistrate judge may review a dispositive matter, such as a motion to suppress, for "proposed findings of fact and recommendations for disposition" of the motion.  28 U.S.C. § 636(b)(1)(B); *see* 28 U.S.C. § 636(b)(1)(A).  Any party objections made thereto trigger a *de novo* review by the district court, which "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

The Court assumes the parties' familiarity with the prior proceedings and the issues that are under review.

I.      **Procedural History and Background as to Standing**

As the parties are well aware, Judge McCarthy's R&R recommends denying the motion to suppress on the threshold issue of standing, only, which is the sole issue addressed herein.[2]

To challenge the law enforcement officers' search of the apartment at 36 Hoffman Place based upon a Fourth Amendment violation, Defendant bears the burden of establishing his standing to bring such a motion.  *See United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991).  In other words, Defendant must show the allegedly illegal conduct infringed upon his personal constitutional rights.  *See*

---

[2] Contrary to Defendant's characterization that the R&R relies "heavily on the issue of standing," standing comprises the entirety of the R&R's legal analysis.

Defendant argues in his objections various challenges to the warrantless search including his position that exigent circumstances did not justify warrantless entry into the apartment, and law enforcement officers conducted an unconstitutional search by intruding onto the curtilage of the residence.  As the Court made clear during oral argument on the objections, it declines to assess at this time the arguments made below that were not reached in the R&R.

*United States v. Padilla*, 508 U.S. 77, 81 (1993); *Rakas v. Illinois*, 439 U.S. 128, 131 n.1, 134 (1978). "This inquiry involves two distinct [but related] questions: first, whether the individual had a subjective expectation of privacy; and second, whether that expectation of privacy is one that society accepts as reasonable." *United States v. Hamilton*, 538 F.3d 162, 167 (2d Cir. 2008). It is the second prong of this inquiry that Judge McCarthy zeroed in on.

Along with his suppression motion (Dkt. No. 56), Defendant filed an affidavit of standing (Dkt. No. 57) asserting that at the time of his arrest on February 19, 2019, he was on New York State parole, and he had been released to the 36 Hoffman Place apartment where he had resided for four months at the time of the search. He also asserted he was responsible for paying rent and utilities; he had keys to the apartment and when he was present there, he controlled who had access; and he received mail at the apartment and stored his belongings there. According to Defendant, he had just returned home when Buffalo Police Department ("BPD") officers entered the premises and searched it, absent anyone's consent.

After hearing oral argument, Judge McCarthy ordered an evidentiary hearing on Defendant's motion to suppress the February 19, 2019 identification of Defendant and the warrantless search of the 36 Hoffman Place apartment, "including whether [D]efendant had an *objectively reasonable* expectation of privacy in the premises[.]" Dkt. No. 66 (text order [emphasis added]); *see* Dkt. No. 118 (hearing tr.), pp. 4-5.

Following the hearing and in his R&R, Judge McCarthy credited the hearing testimony of Defendant's supervising parole officer, Scott Rogacki, "over the untested assertions of [Defendant]'s affidavit." Rogacki testified that Defendant did

4

not have permission to reside with his girlfriend at 36 Hoffman Place until February 28, 2019, over a week after the February 19, 2019 search (*see* Dkt. No. 118, pp. 14-15).  Parole records corroborated this testimony (*see* Dkt. No. 226-3 [Gov't Ex. 3], p. 2), as did testimony by BPD Lieutenant William Moretti concerning a videotaped, post-arrest interview of Defendant in which Defendant stated he resided at 79 Schuele Avenue (*see* Dkt. No. 218 [hearing tr.], p. 70).  Rogacki also testified that pursuant to Defendant's conditions of parole, he had to be at his approved residence of 79 Schuele Avenue during the hours of 9:00 p.m. to 8:00 a.m., including on February 19, 2019 (*see* Dkt. No. 118, pp. 11-13, 15; *see also* Dkt. No. 226-4 [Gov't Ex. 4], p. 2 [Certificate of Release to Parole Supervision, noting one of Defendant's special conditions of release was "I will abide by a curfew established by the PAROLE OFFICER."]).  The search of the apartment at 36 Hoffman Place commenced at approximately 11:40 p.m., when Defendant would have been expected—because it was within the hours of curfew—to be at 79 Schuele Avenue.

In sum, Judge McCarthy found that 36 Hoffman Place was not Defendant's residence at the time of the search (or at the very least, not his approved residence), and contrary to Defendant's representations in his affidavit, it was not the address parole released him to.

The Certificate of Release to Parole Supervision also set forth the following standard condition of release to New York State parole:

> 4. *I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence and*

> *property.* I will discuss any proposed changes in my
> residence, employment or program status with my Parole
> Officer. I understand that I have an immediate and
> continuing duty to notify my Parole Officer of any changes
> in my residence, employment or program status when
> circumstances beyond my control make prior discussion
> impossible.

Dkt. No. 226-4 (Gov't Ex. 4), p. 1 (emphasis added). Defendant signed the parole

supervision form acknowledging he had read and understood the conditions of his

release, including this search condition. *Id.*; *see* Dkt. No. 118, pp. 8-11.

Judge McCarthy further found that even if Defendant was an overnight guest

at 36 Hoffman Place on February 19, 2019, as Defendant claimed in the alternative,

his "expectation of privacy was far from that of a conventional overnight guest" due

to his parole status and being subject to curfew and search conditions he had

consented to. Judge McCarthy reasoned that "[u]nder these circumstances"

Defendant failed to meet his burden of showing he had an objectively reasonable

expectation of privacy in 36 Hoffman Place at the time of the search so as to

challenge it. In making this recommendation, he cited two out-of-Circuit cases,

which are discussed further below, and quoted the Supreme Court proposition that

"parolees . . . have severely diminished expectations of privacy by virtue of their

status alone." *Samson v. California*, 547 U.S. 843, 852 (2006).

## II.   Parolees' Diminished Expectation of Privacy, and Warrantless Search of a Parolee's Residence

To start, the Court adopts Judge McCarthy's recommendation, based on his

credibility determinations, finding that Defendant resided at 79 Schuele Avenue and

not 36 Hoffman Place when the search took place—and that Defendant did not have

6

permission from Rogacki to stay overnight at 36 Hoffman Place on that date.  *See United States v. Quintana*, 12-CR-214S, 2018 WL 718565, 2018 U.S. Dist. LEXIS 19420, *3 (W.D.N.Y. Feb. 6, 2018) ("As a general matter, this Court defers to a magistrate judge's credibility findings in a criminal suppression context."). Defendant concedes as much in his objections; he was at the apartment outside the hours of his established curfew, and it was not an "approved overnight residence."

The closer and more complicated question is whether Defendant's diminished expectation of privacy due to his parole status rendered any expectation of privacy he had in the 36 Hoffman Place apartment objectively unreasonable, meaning he has no standing under this set of circumstances.

Defendant does not contest, nor could he, that as a parolee his expectation of privacy was "severely diminished."  *Samson*, 547 U.S. at 852.  Rather, Defendant argues that his parole status should not preclude the Court from finding he had a legitimate expectation of privacy in the apartment, and that the case law relied upon by Judge McCarthy is distinguishable because the warrantless search of 36 Hoffman Place was conducted by law enforcement and not a parole officer.  The Government argues in opposition that Judge McCarthy correctly found that Defendant's "parolee status [and curfew component] limited his ability to claim he was an overnight guest to confer standing."

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. const. amend. IV.  A warrantless search is "*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-

delineated exceptions," such as voluntary consent to search of a person authorized to grant such consent, as well as exigent circumstances, *i.e.*, when an emergency creates an urgent need for police action.  *Katz v. United States*, 389 U.S. 347, 357 (1967); *see Riley v. California*, 573 U.S. 373, 382 (2014) ("In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."); *United States v. Chandler*, 56 F.4th 27, 41 (2d Cir. 2022) ("Ordinarily, law enforcement must obtain a warrant supported by probable cause before searching a private residence."); *Chamberlain v. City of White Plains*, 960 F.3d 100, 105 (2d Cir. 2020) ("The home has properly been regarded as among the highest protected zones of privacy, and the sanctity of private dwellings is ordinarily afforded the most stringent Fourth Amendment protection.") (internal quotation marks and citations omitted); *United States v. Washington*, 12 Cr. 146 (JPO), 2012 WL 5438909, 2012 U.S. Dist. LEXIS 159863, *6 (S.D.N.Y. Nov. 7, 2012) ("In general, warrantless searches – particularly of the home – are presumed unconstitutional.").

It is well established that "the ultimate touchstone of the Fourth Amendment is reasonableness."  *Kentucky v. King*, 563 U.S. 452, 459 (2011) (internal quotations and citation omitted).  "[W]hether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests."  *Samson*, 547 U.S. at 848 (internal quotation marks omitted).

"A parolee's reasonable expectations of privacy are less than those of ordinary citizens . . .,[3] and are even less so where . . . the parolee, as a condition of being released from prison, has expressly consented to having his residence searched by his parole officer."  *United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006) (internal citations omitted), *cert. denied*, 549 U.S. 1136 (2007); *see United States v. Jackson*, 663 F. App'x 31, 33 (2d Cir. 2016) (summary order) ("A releasee's expectation of privacy is further diminished where he has consented to a search condition.") (collecting cases).

The reasonableness of a warrantless *parole search* has been held to "turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty" (*United States v. Justiniano*, 401 F. App'x 595, 596 (2d Cir. 2010) (summary order) (internal quotation marks and citation omitted)), as it is widely recognized that "the state has a legitimate interest in closely monitoring the activities of its parolees" (*Massey*, 461 F.3d at 179) (internal citation omitted).  A search, then, when conducted by a parole officer or at the direction of a parole officer in pursuit of legitimate parole-related objectives,[4] falls under the

---

[3] This is because "parole is an established variation on imprisonment of convicted criminals . . . The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abides by certain rules during the balance of the sentence . . . In most cases, the State is willing to extend parole only because it is able to condition it upon compliance with certain requirements."  *Samson*, 547 U.S. at 850 (internal quotation marks and citations omitted).

[4] Police presence does not render such a search constitutionally unreasonable.  The Second Circuit in *United States v. Reyes*, 283 F.3d 446, 462-65 (2d Cir. 2002) "specifically rejected stalking horse challenges to warrantless searches by probation or parole officers accompanied by police."  *United States v. Newton*, 369 F.3d 659, 667 (2d Cir. 2004) ("we reiterate *Reyes*'s rejection of stalking horse challenges"); *see Chandler*, 56 F.4th at 43 (finding "no reason to revisit" its prior ruling that rejected the stalking horse theory as a valid defense in this Circuit);

"special needs" exception to the warrant and probable cause requirements of the Fourth Amendment—where the Government has "special needs, beyond the normal need for law enforcement" (*Griffin v. Wisconsin*, 483 U.S. 868, 873-74 (1987)), the special need specifically being supervision of parolees (*see United States v. Grimes*, 225 F.3d 254, 259 (2d Cir. 2000)).

The Second Circuit has recently recognized the "critical difference" between a search conducted by parole officers to further the special needs of the parole system as described above, and a search conducted by police officers to further the State's general interest in law enforcement.  *United States v. Braggs*, 5 F.4th 183, 187-88 (2d Cir. 2021).  Defendant generally points to this distinction in his objections, conceding that had the instant search been overseen by his parole officer, "a different result may be evident."

The search of 36 Hoffman Place was conducted by officers of the BPD, not by Rogacki or any other parole officers.  The record is also devoid of any indication that the search was prompted by parole-related objectives or suspected violations by Defendant of his parole conditions.  While it was later determined that Defendant was present at an unapproved residence and outside the hours of his established curfew, his violation of those parole conditions was not the impetus of law

---

*see also Washington*, 2012 U.S. Dist. LEXIS 159863, at *20-21 ("In light of *Grimes*, *Reyes*, and *Newton*, as well as subsequent district court precedent, it is crystal clear that the stalking horse theory is not a valid defense to warrantless searches of probationers, parolees, or individuals on supervised release in this Circuit.").  The "stalking horse" theory prohibits a probation or parole officer from using his or her authority for a probation or parole search as a ruse for law enforcement officers to "evade the Fourth Amendment's usual warrant and probable cause requirements for police searches and seizures."  *Reyes*, 283 F.3d at 462.

enforcement action.  The Government apparently recognized that the special needs

exception does not apply here as it instead argued below that exigent circumstances

justified the search.

Unlike warrantless parole searches analyzed under the "special needs"

framework established by the *Griffin* line of cases, warrantless general law

enforcement searches of parolees are analyzed under the "totality of the

circumstances" framework used in *Samson* and *United States v. Knights*, 534 U.S.

112 (2001),[5] which considers all the circumstances of a search.  *See Braggs*, 5

---

[5] In *Knights*, the Supreme Court upheld a warrantless search of a state probationer's home by a regular law enforcement officer (who was aware of the probationer's status) where the search was for "investigatory" (*i.e.*, not "probationary") purposes, and where the search was "supported by reasonable suspicion [that criminal conduct was occurring] and authorized by a condition of probation[.]"  *Knights*, 534 U.S. at 115-16, 121-22.

Subsequently, in *Samson*, the Supreme Court analyzed the actions of a law enforcement officer who stopped and searched a California parolee, who the officer had prior contact with and knew was on parole, absent suspicion and based "solely . . . on [his] status as a parolee[.]"  *Samson*, 547 U.S. at 846-47.  Employing the "totality of the circumstances" approach and general Fourth Amendment principles, the Supreme Court held that the law enforcement officer's suspicionless search of the parolee's person—not a warrantless search of a parolee's residence—was constitutional under the Fourth Amendment where (1) the search was conducted pursuant to a "clear and unambiguous" suspicionless-search condition that the parolee was aware of, and (2) California's parole search law prohibited "'arbitrary, capricious or harassing' searches."  *Id.* at 846-57.  The Court also noted that under California precedent, "an officer would not act reasonably in conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee."  *Id.* at 856 n.5.

The Second Circuit has grappled with the reach and application of *Samson*.  "[T]he scope of *Samson*'s holding is unclear.  The suspicionless search at issue in *Samson* was a search of the parolee's person.  At no point in the opinion does the Supreme Court address the issue of whether a suspicionless search of a parolee's residence is permitted by the Fourth Amendment under the California statute or otherwise."  *United States v. White*, 622 F. Supp. 2d 34, 41-42 (S.D.N.Y. 2008); *see Reed v. Sheppard*, 321 F. Supp. 3d 429, 449 (W.D.N.Y. Aug. 17, 2018) ("Neither the Supreme Court nor the Second Circuit has ever approved the search of [a] parolee's residence absent reasonable suspicion or a clear and unambiguous waiver of suspicionless searches.") (internal quotation marks and citation omitted, emphasis added).  Moreover, case law post-*Samson* is conflicting whether the relevant parole regulation in New York is akin to the California statute at issue in *Samson*, meaning it is unclear whether *Samson* applies to cases involving New York parolees.  *See Reed*, 321 F. Supp. 3d at 449 (collecting cases); *White*, 622 F. Supp. 2d at 41 (collecting cases).

F.4th at 187-88.  "In determining the reasonableness of the search of a person who is on probation [or parole], [courts] are to follow the general Fourth Amendment approach of examining the totality of the circumstances . . . with the probation [or parole] search condition being a salient circumstance . . . [that] informs both sides of th[e] balance."  *United States v. Chirino*, 483 F.3d 141, 147 (2d Cir. 2007) (internal quotation marks omitted), quoting *Knights*, 534 U.S. at 118-19.  Because law enforcement officers were the only individuals involved in the warrantless search of 36 Hoffman Place and the search was conducted for investigatory purposes, the traditional Fourth Amendment analysis would be applied to assess the constitutionality of their actions.

Judge McCarthy did not evaluate the constitutionality of the search, though, as he rested his recommendation on lack of standing.  Even so, the contours of Fourth Amendment jurisprudence discussed above necessarily inform the concepts of standing and parolees' expectations of privacy.

"Caselaw in this Circuit indicates that a parolee's significantly diminished expectation of privacy follows him to premises other than his own residence."  *Reed*, 321 F. Supp. 3d at 447 (internal citations omitted, collecting cases).  In this case, however, had the warrantless investigatory search by law enforcement been conducted at Defendant's residence of 79 Schuele Avenue, the Court is not convinced that Defendant would forego all privacy rights solely by virtue of his parole status.  Recognizing that he may have some privacy interest in 36 Hoffman Place, then, would not "grant [him] broader rights in the third party's home than he would

12

have in his own home." *United States v. Pabon*, 603 F. Supp. 2d 406, 417

(N.D.N.Y. 2009) (internal quotation marks and citations omitted).

In *United States v. Stockton*, 530 F. Supp. 3d 611 (W.D. Va. 2021), cited in

the R&R, the district court held that the defendant had no standing to contest the

search of his friend's home when considering a combination of factors, *i.e.*,

defendant's connection to the home was "short, limited in scope and depth, and

unauthorized under the terms of his supervised release, which is why he was

arrested in the first place." *Id.* at 621.  At the time of the search of his friend's South

Carolina residence, the U.S. Marshals Service was effectuating an arrest warrant for

defendant obtained by the U.S. Probation Office for the Western District of Virginia,

as defendant had violated the terms of his supervised release by leaving that district

without permission. *Id.* at 613-14.  The district court factored this violation into its

conclusion regarding standing, as well as the "warrantless search condition"

defendant was subject to permitting such searches. *Id.* at 621.

In *United States v. Curtis*, No. 5:17-CR-11-1H(2), 2017 WL 5492020, 2017

U.S. Dist. LEXIS 189055 (E.D.N.C. Oct. 10, 2017), *report and recommendation*

*adopted*, No. 5:17-CR-11-1H, 2017 WL 5490844, 2017 U.S. Dist. LEXIS 188482

(E.D.N.C. Nov. 15, 2017), the court held that the search conducted by a multi-

agency search team—including at least two state probation/parole officers—of the

defendant-state-parolee's unapproved residence, his girlfriend's home, was

reasonable under the general Fourth Amendment balancing test articulated in

*Knights* and *Samson* and supported by reasonable suspicion. *Curtis*, 2017 U.S.

Dist. LEXIS 189055, at *13-18.  The search was precipitated by a tip that defendant

13

was violating his post-release supervision by residing at an unapproved residence and he was engaged in criminal activity at that location. *Id.* at *13 n.4.  The court also stated it was "arguable" under the facts that defendant had no standing to challenge the legality of the search—a point not raised by the Government. *Id.* at *15.  But even if defendant did have standing, "his privacy interest would have been significantly diminished" due to his parole conditions restricting his movements absent approval. *Id.* at *15-16.  In sum, the court held that defendant's privacy interest in a third party's residence did not, "considering the totality of the circumstances, outweigh the Government's interest in public safety and reducing recidivism among parolees." *Id.* at *18.

Here, in evaluating the issue of standing, the Court may contemplate Defendant's "significantly diminished" privacy interests stemming from his parole status, as well as the agreed-to search condition, and his location at an unapproved residence outside the hours of his curfew at the time of the search.  Distinguishable from *Stockton* and *Curtis*, however, Defendant's unauthorized presence at 36 Hoffman Place was not at all the reason for the search.  Moreover, the wording of Defendant's search condition differs from that in *Stockton*.  *See also United States v. Dennis*, No. 3:18-cr-328 (VAB), 2020 WL 1316658, 2020 U.S. Dist. LEXIS 48035, *18-19 (D. Conn. Mar. 20, 2020) (holding that because Connecticut's parole search condition was "silent as to whether a warrant would ever be required to conduct a search," which differed from the California search condition in *Samson*, defendant "had at least some minimal expectation of privacy" that was "sufficient to allow him

to move to suppress the evidence that was seized—i.e., to give him 'standing' to move to suppress").

The Court concludes that Defendant's status as a parolee did not eradicate his ability to demonstrate his objective expectation of privacy in 36 Hoffman Place.

## III.   36 Hoffman Place Apartment

With respect to Defendant's connection to 36 Hoffman Place, again, Rogacki's testimony and other evidence directly refuted Defendant's claim that he had been residing at 36 Hoffman Place for a period of four months at the time it was searched.  Nonetheless, it is apparent upon the Court's review of the hearing transcript that the Government presented no evidence challenging Defendant's remaining assertions in his affidavit of standing regarding his right to exclude others from the residence, specifically, that he paid rent and utilities for 36 Hoffman Place, had keys to the unit and controlled who had access to it, received mail there, and stored belongings there.  *See United States v. Miller*, 382 F. Supp. 2d 350, 362-63 (N.D.N.Y. 2005) ("Often, weight [given to a defendant's affidavit] will be influenced by *whether the affidavit is contradicted by more cogent evidence*, especially that which withstands the scrutiny of cross-examination.") (emphasis added); *see also United States v. Glenn*, 288 F. Supp. 2d 346, 349 (W.D.N.Y. July 2, 2003) (finding defendant could challenge a warrantless search where "[t]he government ha[d] not refuted any of [defendant]'s allegations relating to the nature and extent of his use of

[the searched residence]"), *report and recommendation adopted*, 288 F. Supp. 2d

346 (W.D.N.Y. Sept. 23, 2003).[6]

      Even if Defendant cannot be categorized as an overnight guest, overnight

guest status is not "required before a guest can have privacy in the home." *United*

*States v. Fields*, 113 F.3d 313, 321 (2d Cir. 1997), citing *Minnesota v. Olson*, 495

U.S. 91, 99 (1990). Rather, "*Olson* stands for the proposition that any guest, in

appropriate circumstances, may have a legitimate expectation of privacy when he is

there 'with the permission of his host, who is willing to share his house and his

privacy with his guest.'" *Fields*, 113 F.3d at 321, quoting *Olson*, 495 U.S. at 99.

      The Court concludes that the un-countered assertions in Defendant's affidavit

are sufficient to permit Defendant to establish a legitimate expectation of privacy in

the 36 Hoffman Place apartment. *See*, *e.g.*, *Fields*, 113 F.3d at 320; *United States*

*v. Caesar*, 18-CR-00139(RJA)(JJM), 2019 WL 3046132, 2019 U.S. Dist. LEXIS

117893, *5-6 (W.D.N.Y. Mar. 11, 2019) (discussing factors to determine "whether an

individual who is not an overnight guest has an objectively legitimate expectation of

privacy"), *report and recommendation adopted*, 18-CR-139-A, 2019 WL 3033329,

2019 U.S. Dist. LEXIS 118492 (W.D.N.Y. July 10, 2019).

---

[6] "While the burden [is] on [the defendant] to establish a protected privacy interest, the court [is] obligated to credit the facts he assert[s], and [may] not properly deny his motion for lack of standing unless the facts he assert[s], seen in the light most favorable to [him], [are] legally insufficient to sustain his burden. If the asserted facts, or the inferences to be drawn from them, [are] contested, the court would need to hold a hearing to determine the contested issues." *United States v. Hamilton*, 538 F.3d 162, 168 (2d Cir. 2008).

## **CONCLUSION**

In sum, the Court finds that under this set of circumstances, Defendant's parolee status did not preclude him from establishing his standing to contest the search, and the uncontested assertions in Defendant's affidavit are sufficient to establish a legitimate expectation of privacy to bypass this threshold hurdle.

Thus, for the reasons set forth herein, it is hereby **ORDERED** that Defendant's objections (Dkt. No. 231) to the R&R are granted, the R&R (Dkt. No. 230) is adopted in part and rejected in part, and the case is re-referred to Judge McCarthy to determine the merits of Defendant's suppression motions, possibly just by way of another Report and Recommendation (as referenced above, a hearing was already held regarding the search and post-hearing briefing was submitted by the parties).  This R&R would presumably address whether exigent circumstances justified warrantless entry into the apartment, and if not, whether the exclusionary rule should apply; whether officers conducted an unconstitutional search by intruding onto the curtilage of the residence; and whether the show-up identification is properly admissible.[7]  It is further

**ORDERED** that because disposition of Defendant's suppression motions remain pending, time between now and an R&R issued by Judge McCarthy is automatically excluded from the Speedy Trial Act, pursuant to 18 U.S.C. §§ 3161(h)(1)(D) and 3161(h)(1)(H).  When the parties appear before Judge McCarthy

---

[7] In the R&R, Judge McCarthy found that because Defendant did not have standing to challenge the search of 36 Hoffman Place, he could not contest his seizure/show-up identification that directly followed the search as fruit of the poisonous tree.  With standing, however, Defendant's argument may now be properly considered if there was a constitutional violation.

upon rendering of this Decision and Order, Judge McCarthy shall more specifically address Speedy Trial Act time dependent on how he will handle the suppression issues moving forward.

**IT IS SO ORDERED.**

_s/Richard J. Arcara_

HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:   October 4, 2023
Buffalo, New York