UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                       Plaintiff,

        v.                                     **DECISION AND ORDER**
                                                  20-CR-61-A

JACOB MELVIN,

                       Defendant.
_____

      Defendant Jacob Melvin, the only defendant remaining in this multi-defendant case, is charged in all counts of an eight-count Indictment (Dkt. No. 1) with Hobbs Act conspiracy (Counts 1 and 4); Hobbs Act robbery (Counts 2 and 5); using, possessing, and brandishing a firearm (Counts 3 and 6); felon in possession of a firearm and ammunition (Count 7); and possession of a firearm with an obliterated serial number (Count 8).

      The case was assigned to this Court, and the Court referred the case to Magistrate Judge Jeremiah J. McCarthy pursuant to 28 U.S.C. § 636(b)(1) for the conduct of pretrial proceedings. On March 13, 2023, following a two-day evidentiary hearing, Magistrate Judge McCarthy issued a Report and Recommendation ("R&R") (Dkt. No. 230 [hereinafter "first R&R"]) recommending that this Court deny Defendant's motions to suppress (Dkt. No. 56) evidence obtained from a warrantless search of 36 Hoffman Place (lower rear apartment), Buffalo, New York on February 19, 2019, and a subsequent show-up identification of Defendant on that same date. In it, Magistrate Judge McCarthy determined that Defendant could not validly assert

a cognizable Fourth Amendment interest in the premises at 36 Hoffman Place such that suppression of evidence seized from that location was unwarranted. (Dkt. No. 230). Defendant filed objections to the first R&R (Dkt. No. 231) on March 24, 2023. The Government filed a response in opposition (Dkt. No. 233), and Defendant filed reply papers (Dkt. No. 234).

Thereafter, this Court, on October 4, 2023, issued a D&O (Dkt. No. 254) which adopted in part and rejected in part the first R&R (Dkt. No. 230) and remanded the case to Magistrate Judge McCarthy for further proceedings. On November 30, 2023, Magistrate Judge McCarthy issued a second R&R (Dkt. No. 264 [hereinafter "second R&R"]) which determined that exigent circumstances failed to support law enforcement's February 19, 2019, warrantless entry into and search of 36 Hoffman Place. The Government objected to the second R&R (Dkt. No. 270) and Defendant responded (Dkt. No. 273 and Dkt No. 276).[1]

On March 25, 2024, this Court heard oral argument on the Government's Objections to Magistrate Judge McCarthy's second R&R. At that time, the Court revisited with the parties the issue addressed by Magistrate Judge McCarthy in his first R&R, that is, whether Defendant established that he had an expectation of privacy in the premises at 36 Hoffman Place that society would recognize as objectively reasonable.

---

[1] In view of the conclusion reached herein, this Court need not consider the objections filed to Magistrate Judge McCarthy's second R&R. That said, the Court very much appreciates and agrees with the thorough and thoughtful legal analysis contained therein. In this Court's view, Magistrate Judge McCarthy reached the correct decision in both of the R&Rs he provided this Court in this case.

Pursuant to 28 U.S.C. § 636(b)(1), the Court applies a *de novo* standard of review to the portions of a Report and Recommendation to which timely and specific objections have been raised.  Upon this Court's *sua sponte* review of both Magistrate Judge McCarthy's first R&R, and this Court's prior D&O, this Court hereby withdraws its prior D&O (Dkt. No. 254) adopts in full the conclusions and reasoning of Magistrate Judge McCarthy as set forth in his first R&R, including the express credibility determinations made by Magistrate Judge McCarthy therein (Dkt. No. 230).  I write only to explain my reasons for withdrawing my prior D&O (Dkt. No. 254) and adopting in full the conclusions and reasoning of Magistrate Judge McCarthy as set forth in his first R&R.

With his motion to suppress, defendant filed an affidavit which purported to establish his expectation of privacy in the premises searched.  In relevant part, that affidavit stated the following:

> 4) With regard to the search at 36 Hoffman Place, Buffalo, New York, at the time of my arrest I was on New York State parole and that was the address I was released to. On February 19, 2019, I lived there for approximately 4 months.
>
> 5) I was responsible for paying rent and the utilities at that premises.
>
> 6) I had the keys to the home and when present, I had control over who had access to the apartment.
>
> 7) I received mail at the residence and stored my belonging in the home.

(Dkt. No. 57).

At the initial suppression hearing, the government presented testimony and evidence which established that that the time of his arrest and the search at 36

3

Hoffman Place on February 19, 2019, defendant was on New York State Parole. In that regard, testimony from defendant's parole officer, Scott Rogacki, together with documentary evidence in the form of parole records presented at the hearing, painted a drastically different view than that contained in the defendant's affidavit of defendant's relationship to 36 Hoffman Place, the site of the search.

In that regard, Rogacki testified that he supervised defendant from October 2018 until June 2019. (Dkt. No. 118, p. 7). He reviewed defendant's conditions of release with him on October 19, 2018. (Dkt. No. 118, p. 8; Dkt. No. 226-4 [Parole Conditions]). Defendant was initially released to reside at 9 McConkey Drive in Kenmore, New York. (Dkt. No. 118, p. 9; Dkt. No. 226-4 [Parole Conditions]). Approximately two days later he moved to 79 Schuele Avenue to reside with his grandmother, until the end of February 2019. (Dkt. No. 118, pp. 11-12). This is confirmed by defendant's parole records. *See* Dkt. No. 226-3, p. 2. Rogacki testified that defendant was subject to a 9 p.m. to 8 a.m. curfew, requiring him to be in the approved residence during those hours. (Dkt. No. 118, p. 12; Dkt. No. 226-4, p. 2 ("I will abide by a curfew established by the PAROLE OFFICER"). He met with defendant on February 14, 2019, at which time defendant reported 79 Schuele Avenue as his address. (Dkt. No. 118, pp. 14-15). He met with defendant again on February 28, 2019 (after the search) and granted defendant permission to live with his girlfriend at 36 Hoffman Place. (Dkt. No. 118, pp. 14-15; Dkt. No. 226-3, p. 2). He testified that prior to February 28, defendant did <u>not</u> have permission to reside at 36 Hoffman Place, or to be there after 9 p.m. *Id*. In fact, contrary to the information in defendant's affidavit,

4

during a videotaped, post-arrest, post-*Miranda* interview on February 19th, defendant stated that he resided at 79 Schuele Avenue (Dkt. No. 218, pp. 69-70), which is consistent with both his parole records (Dkt. No. 226-3, p. 2) as well as the parole officer's testimony at the hearing.

Based upon the foregoing, Magistrate Judge McCarthy, in his first R&R, recommended that the defendant's motion to suppress be denied. (Dkt. No. 230). Specifically, Magistrate Judge McCarthy first noted "that defendant must show that he personally had an expectation of privacy in the place searched and that his expectation was a reasonable one." (Dkt. No. 230, pp. 2-3). Judge McCarthy then noted that to attempt to meet this burden of establishing his reasonable expectation, defendant "offered no evidence on that issue" and instead chose "to rely solely upon his Affidavit." (Dkt. No. 230, p. 3). Indeed, defendant argued to Magistrate Judge McCarthy "that 'since the government has not disproved any of the allegations' in this Affidavit, 'the Court should adopt all of those as true.'" *Id.* In refusing to do so, however, Magistrate Judge McCarthy made the following express and specific credibility determination, "I credit the testimony of Rogacki (who was subject to cross-examination) over the untested assertions of Melvin's Affidavit." (Dkt. No. 230, p. 4). In crediting the parole officer's testimony and the documentary evidence regarding parole conditions over the untested and conclusory allegations,[2] Magistrate Judge

---

[2] Courts are entitled to "give greater weight to [witness] testimony, which was subject to cross examination, than to [sworn] affidavits." *United States v. Gardner*, 611 F.2d 770, 774 n. 2 (9th Cir. 1980). *See also United States v. Frank*, 8 F.Supp.2d 284, 291 n. 2 (S.D.N.Y.1998) (crediting the testimony of witnesses over the allegations in an affidavit

5

McCarthy made the following factual findings: (1) defendant's actual and authorized parole residence at the time of the search was 79 Scheule, not 36 Hoffman Place, the situs of the search (Dkt. No. 230, p.4); (2) prior to the date of the search, defendant did not have permission to reside at 36 Hoffman Place or to be there after 9:00 p.m. (Dkt. No. 230, p.4); (3) defendant was present at 36 Hoffman Place at the time of the search in violation of the curfew condition of his parole (Dkt. No. 230, p.4); and (4) defendant, as a condition of his Parole, consented to the "search and inspection of my person, residence and property." (Dkt. No. 230, p.5).

Yet notwithstanding the explicit credibility determination made by Magistrate Judge McCarthy, this Court, in its prior D&O, concluded that the "uncontested assertions in defendant's affidavit are sufficient to establish a legitimate expectation of privacy to bypass this threshold issue." (Dkt. No. 254, p.17). Upon further reflection, that conclusion was incorrect. The assertions in defendant's affidavit were contested. Magistrate Judge McCarthy appropriately credited Rogacki's testimony as well as the parole records presented at the hearing (and even defendant own statements following his arrest) in concluding that that defendant's actual residence at the time of his search was not 36 Hoffman Place, the situs of the search, but was, instead, 79 Schuele Avenue. Since, as Judge McCarthy expressly determined, 36 Hoffman Place was not *where defendant actually lived*, his ability to assert a legitimate expectation of privacy sufficient to establish his Fourth Amendment interest in that location, must

---

because the affidavit was not subject to cross-examination and the court found the testifying witnesses fully credible).

derive from another cognizable connection he has to the property which was the subject of the search. To be sure, the Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures ...." U.S. Const., Amdt. 4 (emphasis added). Yet as Magistrate Judge McCarthy specifically determined, 36 Hoffman was <u>not</u> defendant's house. Thus, to be able to mount a Fourth Amendment challenge to the search of such premises, defendant must establish—and this Court must find—that he has some other legally recognized interest in it.

This Court's original D&O erred in concluding, without hearing any evidence itself, that the untested and conclusory allegations in defendant's affidavit to be sufficient to "bypass this threshold issue," *see*, Dkt. No. 254, p.17, and in so doing, this Court erred in ignoring or rejecting the fact that Magistrate Judge McCarthy specifically credited the testimony of the parole officer and the documentary evidence presented by the government at the hearing "over the untested assertions of Melvin's Affidavit." (Dkt. No. 230, p. 4). Magistrate Judge McCarthy expressly rejected defendant's argument that "'since the government has not disproven any of the allegations' in the Affidavit, 'the Court should adopt all of those as true'" (Dkt. No. 230, p. 3). "[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008); *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999) (same).

7

The Supreme Court has expressed the appropriate standard to be employed to determine whether an individual may avail themselves of the protection afforded by the Fourth Amendment as follows:

> in order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable; *i.e.*, ***one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society***.

*Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quotations and citations omitted)(emphasis supplied). Stated slightly differently, the only way that the warrantless search at issue here would violate the defendant's Fourth Amendment rights would be if defendant "manifested a subjective expectation of privacy… that society accepts as objectively reasonable." *California v. Greenwood*, 486 U.S. 35, 39 (1988) (citing *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987); *California v. Ciraolo*, 476 U.S. 207, 211 (1986); *Oliver v. United States*, 466 U.S. 170, 177 (1984); *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)).

Since the Magistrate Judge found—based upon the testimony and documentary evidence presented to him at the hearing—that defendant, in fact, was not living on such premises, then any claim to Fourth Amendment protection asserted by defendant in the premises at 36 Hoffman Place must necessarily derive from something other than such location being his house. As Justice Scalia has stated, "people call a house 'their' home when legal title is in the bank, when they rent it, and even when they merely occupy it rent free—*so long as they actually live there*."

*Minnesota v. Carter*, 525 U.S. 83, 95–96 (Scalia, J., concurring) (emphasis in the original).  In making the credibility determinations that he did, Magistrate Judge McCarthy found that defendant did not actually live at 36 Hoffman Place.  Thus, such premises may not be reasonably be characterized as "his house."

Nevertheless, even though a particular residence may not properly be characterized as one's own house, the Supreme Court has afforded the protection offered by the Fourth Amendment to individuals whose interest in such property is something less than that of owner:

> We were right to hold in *Chapman v. United States*, 365 U.S. 610 (1961), that the Fourth Amendment protects an apartment tenant against an unreasonable search of his dwelling, even though he is only a leaseholder. And we were right to hold in *Bumper v. North Carolina*, 391 U.S. 543 (1968), that an unreasonable search of a grandmother's house violated her resident grandson's Fourth Amendment rights because the area searched "was his home," *id*., at 548, n. 11 (emphasis added). We went to the absolute limit of what text and tradition permit in *Minnesota v. Olson*, 495 U.S. 91 (1990), when we protected a mere overnight guest against an unreasonable search of his hosts' apartment. But whereas it is plausible to regard a person's overnight lodging as at least his "temporary" residence, it is entirely impossible to give that characterization to an apartment that he uses to package cocaine.

*Minnesota v. Carter*, 525 U.S. at 96–97.

At best then, in view of Judge McCarthy's specific credibility determination that defendant was not living at 36 Hoffman Place, the most that defendant can show is that his girlfriend's residence at 36 Hoffman Place was his "temporary residence" by virtue of his presence—arguably—as an overnight guest.  But even if defendant did harbor a subjective expectation of privacy based upon his status as an overnight guest, this Court must still determine whether that subjective expectation—in a

9

premises other than his own home—was, under the totality of the circumstances, "legitimate" in that it is "one that society is prepared to recognize as 'reasonable.'" *Rakas v. Illinois*, 439 U.S. 128, 143, n.12.(1978)

Indeed, under the reasonable-expectation-of-privacy approach enunciated in *Katz*, "[t]he second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Smith v. Maryland*, 442 U.S. at 740 (quotations and citations omitted).

In making this determination of whether defendant's subjective expectation is objectively reasonable, the Supreme Court has cautioned: "The concept of an interest in privacy that society is prepared to recognize as reasonable is, by its very nature, critically different from the mere expectation, however well justified, that certain facts will not come to the attention of the authorities." *United States v. Jacobsen*, 466 U.S. 109, 122 (1984). Determining whether society would view the expectation as objectively reasonable turns on whether the government's intrusion infringes on a legitimate interest, based on the values which the Fourth Amendment protects. *See California v. Ciraolo*, 476 U.S. 207, 212 (1986) (explaining that "[t]he test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity," but instead "whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment") (quoting *Oliver v. United States*, 466 U.S. at 181–83). This second factor of the *Katz v. United States* reasonable-

expectation-of-privacy analysis developed from Justice Harlan's "attempt to give content to the word 'justifiably' in the majority's assertion that eavesdropping on *Katz* was a search because it 'violated the privacy upon which he justifiably relied while using the telephone booth.'" 1 W. LaFave, *Search & Seizure* § 2.1(d)(6th ed. 2024) (quoting *Katz v. United States*, 389 U.S. at 353).

Thus, whether society will recognize a certain expectation of privacy does not turn on whether the hypothetical reasonable person would hold the same expectation of privacy, but rather whether the expectation of privacy is justified or legitimate. The Supreme Court has provided that, while no single factor determines legitimacy, whether society recognizes a privacy interest as reasonable is determined based on our societal understanding regarding what deserves protection from government invasion:

> No single factor determines whether an individual legitimately may claim under the Fourth Amendment that a place should be free of government intrusion not authorized by warrant. In assessing the degree to which a search infringes upon individual privacy, the Court has given weight to such factors as the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion.

*Oliver v. United States*, 466 U.S. at 177–78 (internal citations omitted).  The Supreme Court has held that "[o]fficial conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." *Illinois v. Caballes*, 543 U.S. at 409 (quoting *United States v. Jacobsen*, 466 U.S. at 123).

Here, regardless of his status as a parolee, defendant still was obligated to demonstrate that despite the fact—as expressly determined by Magistrate Judge McCarthy—that he did <u>not</u> live at 36 Hoffman Place, that he nevertheless maintained an objectively reasonable expectation of privacy in that location. Yet, as found by Magistrate Judge McCarthy—and not contested by defendant—he was on New York State Parole at the time of the search.  Moreover, and as further found by Magistrate Judge McCarthy, defendant's presence at 36 Hoffman Place at close to midnight on the day of the search was in violation of the terms of his parole.  In that regard—and again as found by Magistrate Judge McCarthy in making the credibility determinations he did—defendant's parole conditions included: (1) a curfew which required him to be in his approved residence (79 Schuele) between 9 p.m. and 8 a.m.; and (2) a search condition whereby he consented to the search of his person, residence, and property. (Dkt. No. 230, pp. 4-5).[3]  The Magistrate Judge made these conclusions by expressly crediting the testimony of the defendant's parole officer, who was subject to cross-examination, "over the untested assertions in [Defendant]'s affidavit." (Dkt. No. 230, p. 4).  In view of the testimony and evidence adduced at the hearing and the express

---

[3] Defendant's parole conditions included the following condition:

> I will permit my Parole Officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my person, residence, and property. I will discuss any proposed changes in my residence employment or program status with my Parole Officer. I understand that I have an immediate and continuing duty to notify my Parole Officer of any changes in my residence, employment or program status when circumstances beyond my control make prior discussion impossible. (Dkt. No. 226-4, p. 1).

He also had a curfew established by his parole officer.  (Dkt. No. 226-4, p.2).

12

credibility determinations made by the Magistrate Judge, however, to rely on untested affidavit which was specifically discredited by the Magistrate Judge, as a basis to "bypass"—as this Court did in its original D&O—any threshold determination of whether defendant's asserted expectation of privacy was "legitimate" or "objectively reasonable" was unfounded.

Whether a particular expectation of privacy may be considered "legitimate varies, of course, with context depending, for example, upon whether the individual asserting the privacy interest is at home, at work, in a car, or in a public park. In addition, the legitimacy of certain privacy expectations vis-à-vis the State may depend upon the individual's legal relationship with the State." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 654 (1995) (citations omitted). The Supreme Court has found that parolees and probationers are less protected by the Fourth Amendment than those who are not under some form of supervision. *See, e.g., Griffin v. Wisconsin*, 483 U.S. 868 (1987); *United States v. Knights*, 534 U.S. 112 (2001); *Samson v. California*, 547 U.S. 843 (2006). The Supreme Court has further recognized that when it comes to those under supervision, individuals—like defendant—who are on parole have the lowest expectation of privacy. *See Samson*, 547 U.S. at 850 ("On this continuum, parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment."); *see also United States v. Reyes*, 283 F.3d 446, 458 (2d Cir. 2002) ("We have held that among the rights diminished by parolee status are Fourth Amendment protections. This observation applies with equal force to individuals, like Reyes, subject to federal

13

supervised release-the reformed successor to federal parole. Like parole, supervised release is a term of supervision following incarceration. However, it differs from parole in an important respect: unlike parole, supervised release does not replace a part of a term of incarceration, but instead is ... given in addition to any term of imprisonment imposed by a court.").

Here, the Magistrate Judge credited the suppression hearing testimony of defendant's Parole Office which established that defendant was released on conditions to New York State Parole in October of 2018. (Dkt. No. 118, pp. 8-9). Among those conditions was defendant's agreement that he "fully understand that [his] person, residence and property are subject to search and inspection." (Dkt. No. 118, p. 10). There was also an "approved residence" associated with defendant, and at the outset, such residence was on McConkey Drive in Kenmore, NY.   (Dkt. No. 118, p. 9).  Among the conditions to which the defendant agreed were the following:

> I'll permit my parole officer to visit me at my residence and/or place of employment and I will permit the search and inspection of my residence and property. I will discuss any proposed changes in my residence, employment or program status with my parole officer. I understand that I have an immediate and continuing duty to notify my parole officer of any changes in my residence. (Dkt. No. 118, pp. 10-11).

Within few days from his release to parole custody, defendant changed his approved address to 79 Scheule, Buffalo, NY, and was placed on a curfew which required that he be subject to a curfew which required to be inside his parole approved residence, between the hours of 9 p.m. and 8 a.m. (Dkt. No. 118, p. 12).  Magistrate Judge

14

McCarthy expressly found that defendant's approved parole residence at the time of the search was 79 Schuele Avenue, Buffalo, New York. (Dkt. No. 230, p. 4).

In *United States v. Braggs*, 5 F.4th 183, 186–87 (2d Cir. 2021), the Second Circuit stated:

> It is beyond dispute that a parolee's home, 'like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable." *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Nevertheless, the *Griffin* Court recognized that "[a] State's operation of a probation system ... presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id*. at 873–74. In light of these special needs, "a search of a parolee is permissible so long as it is reasonably related to the parole officer's duties." *United States v. Grimes*, 225 F.3d 254, 259 n.4 (2d Cir. 2000). Among these duties are the supervision, rehabilitation, and societal reintegration of the parolee, as well as assuring that "the community is not harmed by the [parolee's] being at large." *Griffin*, 483 U.S. at 875; see *People v. Huntley*, 43 N.Y.2d 175, 181–82, 401 N.Y.S.2d 31 (1977).

*United States v. Braggs*, 5 F.4th 183, 186–87 (2d Cir. 2021). Thus, in those situations in which a warrantless search of a parolee's home is conducted by parole officers or those acting under the direction of such parole officer, courts justify such searches based on the "special need" arising out of "the rehabilitative relationship between the parolee and the parole officer, and thus not extending to other law enforcement officers unless they are acting under the direction of the parole officer*." United States v. Braggs*, 5 F.4th at 188 (citing *United States v. Freeman*, 479 F.3d 743, 748 (10th Cir. 2007)).

Contrasted with the foregoing "special needs" line of cases which focus on the rehabilitative relationship between a parolee and parole officer, however, is another line of cases, including *United States v. Knights*, 534 U.S. 112, 121 (2001) and

15

*Samson v California*, 547 U.S. 843, *supra*. Both *Knights* and *Samson* involved searches—like this one—which were conducted by police officers (not parole officers), and in each case their actions were aimed at "vindicating the 'State's general interest in law enforcement'" as opposed to furthering the special needs of the parole system. *United States v. Braggs*, 5 F.4th at 188. Consequently, the Courts have "interpret[ed] the *Knights-Samson* line of cases as resting on the parolee's diminished expectation of privacy stemming from his own parole agreement and the state regulations applicable to his case." *Id*. (quoting *United States v. Freeman*, 479 F.3d at 748).

As the Supreme Court held in *Samson v. California*, "the Fourth Amendment does not prohibit" even a "suspicionless search of a parolee" or his residence. *Samson v. California*, 547 U.S. at 857. The Supreme Court reached this conclusion after "[e]xamining the totality of the circumstances pertaining to petitioner's status as a parolee" and finding that he "did not have an expectation of privacy that society would recognize as legitimate." *Id*. at 852. In so ruling, the Court noted that the petitioner had agreed, as a condition of his release, to submit to suspicionless search at any time; but the Court expressly declined to rest its holding on the "acceptance of the search condition [as] consent" rationale. *Id*. at 852 n.3. Instead, the Court held that parolees have "severely diminished expectations of privacy" even absent such consent, because while on parole they remain "on the 'continuum' of state-imposed punishments" in a status that is "more akin to imprisonment" than other statuses. *Id*. at 850, 852; *see also*, *United States v. Massey*, 461 F.3d 177, 179 (2d Cir. 2006) ("[a] parolee's reasonable expectations of privacy are less than those of ordinary citizens and are even less so where, as here, the parolee, as a condition of being released

16

from prison, has expressly consented to having his residence searched by his parole officer") (citations omitted), *cert. denied*, 549 U.S. 1136 (2007); *United States v. Grimes*, 225 F.3d 254, 258 (2d Cir. 2000) ("parole justifies some departure from traditional Fourth Amendment standards"). "'The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence.'" *Samson*, 547 U.S. at 850 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)). Individuals on parole have even more diminished expectations of privacy than those on probation. *See United States v. Braggs*, 5 F.4th at 187 n.3 ("parolees have fewer expectations of privacy than probationers") (internal quotations omitted).

Although the Supreme Court has expressly declined to hold that a parolee categorically has no expectation of privacy in any context, *see Samson*, 547 U.S. at 850 n.2 ("Nor ... do we equate parolees with prisoners for the purpose of concluding that parolees, like prisoners, have no Fourth Amendment rights"), defendant, as a parolee who was required to submit to a parole condition which permitted the search of his person, residence, and property had no objectively reasonable expectation of privacy in the premises here searched since—as Magistrate Judge McCarthy expressly determined—that the residence was <u>not</u> his home. By the terms and conditions of his parole he had <u>no</u> right to reside or even be there at the time of the search. Moreover, notwithstanding Magistrate Judge express credibility findings to the contrary, even assuming *arguendo* that defendant could establish that it was his residence, the uncontroverted proof at the hearing was that as a condition of his parole he consented to "the search and inspection of [his] residence and property." (Dkt. No.

17

118, pp. 10-11). As such, any subjective expectation that defendant may have held in 36 Hoffman Place at the time of the search was not objectively reasonable.

For the same reason that the Supreme Court has recognized that society is not prepared to recognize as objectively reasonable a parolee's expectation of privacy in his own house where such individual has as a condition of his parole consented to the search of such house, *Samson v. California*, 547 U.S. at 852, it is also not objectively reasonable for a parolee who is an unauthorized overnight house guest at someone else's house to expect that his status as a houseguest somehow trumps his status as a parolee. Where, as here, the very terms and conditions of defendant's parole rendered his status as an overnight guest to be in contravention of those terms and conditions, any expectation of privacy asserted by defendant cannot be considered objectively reasonable in society's eyes. Society does not—and ought not—recognize as objectively reasonable a parolee's ability to gain an enhanced and cognizable expectation of privacy by breaching the conditions of his parole release. *See, e.g.*, *United States v. Edelman*, 726 F.3d 305, 310 (2d Cir. 2013) (search of parolee's apartment sublet was permissible after he escaped halfway house, because "[a] person whose 'legitimate privacy expectations [are] severely curtailed' cannot 'expand his legitimate expectations of privacy by escaping.'" (quoting *United States v. Roy*, 734 F.2d 108, 111–12 (2d Cir.1984)).[4] Stated differently, regardless of whatever

---

[4] This Court's D&O indicated that because "Defendant's unauthorized presence at 36 Hoffman Place was not at all the reason for the search" and because "the wording of Defendant's search condition" was different than such search conditions set forth in other cases—including *Samson*—which explicitly referenced warrantless searches, this Court determined that he retained at least some expectation of privacy which was sufficient to confer upon him standing to contest the search. (Dkt. No. 254, pp. 14-15). Yet, the

18

expectations of privacy a parolee may retain, what a person who knowingly and willfully violates the terms of his parole cannot do is "expand his legitimate expectation of privacy by escaping [his parole residence]." *United States v. Harrison*, No. 3:22-CR-455, 2023 WL 4670957, at *12 (N.D.N.Y. July 20, 2023).  "To conclude otherwise 'would offer judicial encouragement to the act of escape and would reward an escapee for his illegal conduct.'"  *Id*. (quoting *Roy*, 734 F.2d 112).  For just as "[a] prisoner cannot by escape rewrite his sentence such that his punishment no longer includes a loss of Fourth Amendment protected privacy," *United States v. Ward*, 561 F.3d 414, 418 (5th Cir. 2009), neither may a parolee, by escaping his parole conditions—which, based upon Magistrate Judge McCarthy's credibility determinations, is exactly what the defendant did in this case—enhance the measure of privacy he may reasonably expect under the Fourth Amendment.  In view of society's "overwhelming interest" in supervising its parolees, *Samson v. California*, 547 U.S. at 853, any subjective expectation defendant may have held in 36 Hoffman Place was not objectively reasonable.

Accordingly, and upon this Court's *sua sponte* review of both Magistrate Judge McCarthy's first R&R, and this Court's prior D&O, this Court hereby withdraws

---

motivations of the police officer's conducting the search—something which the Second Circuit has unequivocally held should "bear no weight in determining whether a search has occurred," *see, United States v. Weaver*, 9 F.4th 129, 145 (2d Cir. 2021) (en banc)—is not a factor in the analysis of whether any subjective expectation of privacy was objectively reasonable. In addition, while the parole condition did not explicitly reference warrantless searches, the consent to search that was agreed to did not contain any limitation whatsoever. The scope of a search is generally defined by its expressed object. *United States v. Ross*, 456 U.S. 798 (1982). In this case, the terms of the search authorization were simple and unlimited.

its prior D&O (Dkt. No. 254) adopts in full the conclusions and reasoning of Magistrate Judge McCarthy as set forth in his first R&R, including the express credibility determinations made by Magistrate Judge McCarthy therein (Dkt. No. 230).  Therefore, it is hereby

**ORDERED** that this Court's prior D&O (Dkt. No. 254) is **WITHDRAWN**; and it is further

**ORDERED** that Magistrate Judge McCarthy's first R&R (Dkt. No. 230) is **ADOPTED** in its entirety for the reasons stated therein, and Defendant's Objections thereto (Dkt. No. 231) and his Motion to Suppress (Dkt. No. 56) are **DENIED.**

The parties are hereby directed to appear before this Court on April 24, 2024, at 9:00 a.m., to set a date for trial.

**IT IS SO ORDERED.**

  *s/Richard J. Arcara*
  HONORABLE RICHARD J. ARCARA
  UNITED STATES DISTRICT COURT

Dated:   April 22, 2024
         Buffalo, New York